UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

NESTOR W. PAYNE                                    Case No.: 12-75463-ast
a/k/a NESTOR NESTOR                                Chapter 7

                              Debtor.
-------------------------------------------------------X

## DECISION AND ORDER ON TRUSTEE'S MOTION FOR SALE OF PROPERTY

### Issues Before the Court

Pending before the Court is the motion filed by Mark A. Pergament, chapter 7 trustee of

the bankruptcy estate of the debtor, Nestor W. Payne, ("Debtor"), seeking to sell Debtor's

residence, subject to all liens, claims and encumbrances, and to obtain an order forcibly evicting

Debtor and his family from their residence (the "Motion").  Objections were filed by Debtor and

the holder of the first mortgage against Debtor's residence.  For the reasons stated herein, this

Court denies the Motion.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (E), (M) and (O), and 1334(b), and the Standing Orders of Reference in effect in

the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012,

but made effective *nunc pro tunc* as of June 23, 2011.

### Background and Procedural History

On September 10, 2012, Debtor filed his voluntary petition for relief under chapter 13 of

the Bankruptcy Code[1] ("Petition").  [dkt item 1]  Debtor listed his residence as 6 Fairfax Drive,

---

[1] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101-
1532. (the "Bankruptcy Code").

Farmingville, NY 11738 (the "Residence"), and stated that he solely owned it in fee simple.

Debtor included a Schedule C with his Petition, in which he asserted, *inter alia*, an exemption in

the Residence in the amount of $1.00, pursuant to the federal exemptions made available

pursuant to 11 U.S.C. § 522(b)(2), (d)(1). [dkt item 1] Debtor scheduled the Residence as being

worth $330,000, subject to a first mortgage in favor of JP Morgan Chase ("Chase") in the

amount of $440,833.25 (the "Chase Mortgage"), and a second mortgage in favor of Green Tree

Servicing in the amount of $80,502 (the "Green Tree Mortgage").

By motion filed on November 26, 2012, Debtor sought to avoid the Green Tree Mortgage

and reclassify it as an unsecured claim under §§ 506(a), 506(d), 1322(b)(1), and 1322(b)(5). [dkt

item 16] On January 10, 2013, this Court entered an order deeming the Green Tree Mortgage as

unsecured during the term of the chapter 13 case, to be voided upon the chapter 13 trustee filing

a certification that Debtor has completed his plan payments.[2] [dkt item 19]

On February 7, 2013, Debtor was able to obtain confirmation of a chapter 13 plan; to do

so he had to overcome an objection to confirmation from Chase and the chapter 13 trustee's

motion to dismiss his case. [dkt items 17, 18, 21, 23, 24] Ultimately, however, Debtor was

unable to comply with his obligations under his plan. The chapter 13 trustee sought dismissal,

but Debtor sought to voluntarily convert his case to chapter 7. [dkt items 25, 26] On September

30, 2013, Debtor's case was converted to chapter 7. [dkt item 27] Thereafter Mark A.

Pergament was appointed as chapter 7 trustee (the "Trustee").

On January 6, 2014, the Trustee filed a notice of discovery of assets. On January 7, the

Clerk served a notice of discovery of assets and set a proof of claim bar date of April 7, 2014.

[dkt item 34].

---

[2] For the reasons discussed in *In re Miller*, this is the protocol used by the Court for avoiding a junior mortgage lien in a chapter 13 case. 462 B.R. 421 (Bankr. E.D.N.Y. 2011).

On January 28, Debtor filed and served an amended exemption claim, in which he, *inter alia*, increased his federal exemption claim in the Residence under § 522(d)(1) to $22,475. [dkt item 38]  No party-in-interest has objected to Debtor's amended exemption claim and the time to do so has lapsed.[3]

On February 20, the Trustee filed his Motion, seeking authority to sell the Residence at a private sale for $17,500 "subject to existing mortgages, liens and encumbrances" pursuant to 11 U.S.C. § 363(b), to an entity known as Fairfax Property Management ("Fairfax"). [dkt item 39] The Trustee recites that Debtor had not been paying the mortgages on the Residence for more than a year, Fairfax would accept the Residence in its current condition, "and will seek to negotiate with the first second mortgagees a transaction that is beneficial to those parties." Motion, ¶8.  The Trustee also requests that this Court direct Debtor and his family to vacate the Residence by March 31, 2014, a condition of the sale that the Trustee had agreed to with Fairfax. Motion, ¶ 9.  Finally, the Trustee states that allowing this sale will result in a "substantial distribution to the general unsecured creditors."[4]  Motion, ¶13.

Debtor filed an objection to the Motion on March 9 (the "Objection")[5].  [dkt item 41] Debtor asserts that he resides in the Residence with his wife and two children, the younger of whom is 16 and in high school, and that being evicted from the Residence during the school year would work a hardship on him and his family.  Debtor does not contest that he is behind on his

---

[3] Rule 4003(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides that "a party in interest may file an objection to the list of property claimed as exempt…within 30 days after any amendment to the list or supplemental schedules is filed". FED. R. BANKR. P. 4003(b).

[4] The chapter 7 bar date has now run. *See* FED. R. BANKR. P. 3002(c). When the thirteen (13) claims that were filed before conversion of the case which have not been objected to are added to the claims filed post-conversion, the aggregate amount of the filed claims substantially exceeds the $17,500 sale price. *See* FED. R. BANKR. P. 1019(3) ("All claims actually filed by a creditor before conversion of the case are deemed filed in the chapter 7 case.").

[5] In conjunction with the Objection, Debtor filed a motion pursuant to § 554(b) and Bankruptcy Rule 6007 seeking to compel the Trustee to abandon the estate's interest in the Residence and scheduled a hearing on it for April 8, 2014. [dkt item 42] The Court adjourned the hearing on Debtor's motion to compel pending the resolution of the Trustee's Motion.

mortgage payments, but states that he has been attempting, albeit unsuccessfully, to modify his

mortgage(s).  Debtor also argues that because of his unchallenged homestead exemption claim of

$22,475, the sale would not benefit the estate because he would be entitled to receive all of the

$17,500 in sale proceeds, regardless of whether the sum of the consensual liens against the

Residence exceeds its fair market value.[6]  Debtor alternatively argues that the Motion should be

denied on public policy grounds[7].

On March 11, Chase filed an objection to the Motion (the "Chase Objection").  [dkt item

43]  Chase asserts that the Trustee cannot sell the Residence as the sale "would violate the due on

sale provision of the mortgage," and that it "would not negotiate a modification/transaction if the

debtor no longer resides in the property."  Chase Objection, ¶¶ 5, 6.  Presumably because Chase

had not sought or obtained relief from the automatic stay, it makes no reference to how such a

sale might impact a foreclosure.

On March 14, the Trustee filed a reply (the "Reply").  [dkt item 44]  As to Debtor, the

Trustee asserts that the sale should be approved over Debtor's objections for the following

reasons: (1) Debtor does not have an exemptible interest in the Residence because it is worth less

than all consensual mortgages against it; (2) Debtor is not entitled to any portion of the proposed

sale proceeds; (3) courts have begun to allow chapter 7 trustees to "short sell" a debtor's

---

[6] Debtor also contends that in the event the Court determines that his homestead exemption is unavailable, he could "exercise a full wildcard exemption to apply to any supposed recovery from the Trustee…In that event there will still be little to no distribution available to the unsecured creditors." Objection, ¶ 14. The Court does not need to reach this issue because Debtor has not yet asserted a §522(d)(5) wildcard exemption and, as discussed below, the Court has denied the Motion on another basis.

[7] Debtor asserts that granting the Trustee's Motion would violate public policy:
> [b]y his actions, the Trustee is facilitating the circumvention of the debtor's statutory rights to contest a foreclosure by delivering the property to the bank without judicial review. Additionally, granting the Trustee's motion would prevent the debtor from being able to modify or file a Chapter 13 bankruptcy in the future should a positive change in his financial circumstances occur. The debtor should be afforded the protections to borrowers which are provided under Federal and New York State Law to every other homeowner.
Objection, ¶15.

Decision and Order - p. 4

residence where there is no equity; (4) Debtor has already lived in the Residence for well over a year without paying his mortgages; and (5) Debtor's protestation that allowing a sale would affect his ability to seek a loan modification is simply speculation.  The Trustee further argues that Debtor and his family can be ordered to vacate the Residence in order to facilitate a sale, the Residence is property of the estate under § 541, Debtor can be compelled to turn the Residence over to the Trustee under § 521(4), and/or this Court can enforce a judgment for possession of the Residence under Bankruptcy Rule 7070.  The Trustee does not address the public policy concerns raised in Debtor's Objection, nor does he address the Chase Objection.

On March 18, the Court held a hearing on the Motion.  Debtor, the Trustee, Chase and Fairfax appeared.  In an effort to narrow the issues, the Court asked the Trustee and Debtor to address two questions: (1) what statutory power this Court has to approve a sale of the Residence subject to liens, claims and encumbrances, yet simultaneously order Debtor and his family to vacate the Residence; and (2) if the sale was authorized, would Debtor's exemption claim attach to the $17,500 sale proceeds.

In response to the first question, the Trustee stated that Debtor has a statutory obligation to cooperate with the Trustee and can be compelled to surrender his rent-free occupancy and vacate possession of the Residence so that the Trustee can convert the Residence to cash.  By doing so, the Trustee argued he can create a dividend for unsecured creditors without prejudicing the rights of secured creditors, like Chase, who would retain their state law rights to foreclose on their collateral.  With respect to the second question, the Trustee stated that Debtor's homestead exemption is unavailable here as there is no equity in the Residence to which his exemption claim can attach.  Thus, all sale proceeds, the Trustee contended, would inure to the benefit of

unsecured creditors.[8]

Debtor conceded that the Trustee has the authority to sell the Residence as property of the estate, but argued that the Trustee could not compel Debtor and his family to vacate the Residence because a "subject to" sale by its very terms is subject to all liens claims, and encumbrances, including Debtor's possessory interest[9] in the Residence.  Debtor further argued that authorizing this sale would have broader negative policy implications by chilling future debtors with underwater homes from filing chapter 7 cases and depriving those debtors of an opportunity to catch up on their mortgage payments.  Debtor also repeated his position that the sale proceeds should attach to his homestead exemption even though there is no equity in the Residence.

As to Chase, the Court inquired whether it would be able to continue loan modification negotiations with Debtor in the event the Residence was sold to Fairfax.[10]  Chase reiterated that, while it was not aware of any ongoing loan modification efforts, it could not modify Debtor's mortgage if he was not living in the Residence.

This Court allowed the parties to file supplemental briefs by April 1.  None were filed. The Trustee did not file a letter withdrawing the Motion or stating that it was moot in light of the March 31 date having passed - the date requested for Debtor and his family to be ordered to vacate the Premises.  Thus, the Motion presents a justiciable case or controversy[11].  Therefore,

---

[8] The Trustee acknowledged that the Court's determination here would very likely have future implications on a trustee's ability to sell a debtor's underwater home to a third-party such as Fairfax.

[9] The Court asked Debtor's counsel whether his position would remain the same if the proposed sale was one under § 363(f) free and clear of liens claims and encumbrances, but he did not answer the question.

[10] The Court also asked Chase whether it was asserting any interest in the sale proceeds as part of its collateral and gave Chase the opportunity to brief the issue. Chase declined to do so.

[11] *See R<2> Invs., LDC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 691 F.3d 476, 481 (2d Cir. 2012) *cert. denied* 2013 U.S. LEXIS 3367 (U.S., Apr. 29, 2013).

this Court will now rule on the Motion.

## Summary of Issues of Law

The material facts underlying this dispute are not controverted.  Thus, this case presents purely issues of law, which are: (1) can the Trustee sell Debtor's Residence subject to all liens, claims and encumbrances yet also obtain an order of this Court that Debtor and his family be evicted from the Residence to facilitate the sale; (2) would Debtor be entitled to any of the sale proceeds under his exemption claim[12]; and (3) can the Trustee sell Debtor's Residence over the objection of the first mortgage holder since the mortgage is not being paid by the buyer.  Because this Court has determined the answer to the first question is no, this Court need not and will not reach the second or third questions.

## Analysis

### *Can the Trustee sell Debtor's Residence?*

*Property of the estate*

When a bankruptcy case is filed, a bankruptcy estate is automatically created; this estate includes all of the debtor's legal or equitable interests in property as of the commencement of the case.  11 U.S.C. § 541(a)(1); *see Schwab v. Reilly*, 560 U.S. 770, 774, 130 S. Ct. 2652, 2657 (2010); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (property of the estate includes "[e]very conceivable interest of the debtor"); *see also Rodgers v. County of Monroe (In re Rodgers),* 333 F.3d 64, 67-68 (2d Cir. 2003) (finding that the debtor's title and right of possession in her residence would be property of the estate but for their termination by a valid prepetition foreclosure sale); *In re 48th Street Steakhouse*, 835 F.2d 427, 430 (2d Cir. 1987) (a mere possessory interest in real property is property of the estate); COLLIER ON

---

[12] Judge Grossman of this district recently addressed this issue in *In re Mannone*, Case No. 14-71247-reg, 2014 Bankr. LEXIS 2235 (Bankr. E.D.N.Y. May 20, 2014), in which he decided that the sale proceeds in a subject to sale, similar to the sale here, would have to be paid to the debtor; he therefore denied that sale motion.

BANKRUPTCY P. 541.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The provision of section 541(a)(1) that the debtor's estate shall include 'all legal or equitable interests of the debtor in property as of the commencement of the case' is extremely broad and includes all rights and interests of the debtor in real property.").

The determination of the interest a debtor holds in specific property is a matter of state law. *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)). However, federal law developed under the Bankruptcy Code determines whether and to what extent a state-law created interest constitutes property of the estate. *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir. 1990).

Under New York law, fee ownership of real property carries with it title, exclusive right of possession, and the right of use for any lawful purpose. *Matter of Brookfield*, 176 N.Y. 138, 146, 68 N.E. 138, 142 (1903); Turano, Practice Commentaries, McKinney's Cons. Law of NY, Book 17B, N.Y. E.P.T.L. 6-1.1. In a voluntary transfer of real property, these rights remain with the grantor until the actual delivery of the deed; in a foreclosure, these rights are not extinguished until the point of an actual sale. *See Rodgers*, 333 F.3d at 67-68 (citing New York cases and N.Y. Real Property Law § 244).

Accordingly, Debtor's interests in the Residence are property of his bankruptcy estate; to what extent, however, is discussed *infra*.

*The function of the trustee*

One of a trustee's primary responsibilities in a chapter 7 case is "to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest". 11 U.S.C. §

704(a)(1). "As an officer of the Court and as a representative of [the debtor's] creditors, the Trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors. Although a Chapter 7 trustee is a fiduciary obligated to treat all parties fairly, his primary duty is to the estate's unsecured creditors." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Merrill Lynch & Co. Research Reports Sec. Litig.)*, 375 B.R. 719, 727 (S.D.N.Y. 2007) (quoting *In re Balco Equities Ltd.*, 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005)); *accord McCord v. Agard (In re Bean)*, 251 B.R. 196, 203 (E.D.N.Y. 2000) *aff'd* 252 F.3d 113 (2d Cir. 2001). "Indeed, underlying all of a chapter 7 trustee's actions, including decisions about sales of property of the estate, is the fiduciary duty to maximize distribution to creditors." *In re Ellis*, 2011 WL 61378, at *2 (Bankr. D. Idaho Jan. 7, 2011); *see Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 844-845 (9th Cir. 2008) (citing *U.S. Trustee v. Joseph (In re Joseph)*, 208 B.R. 55, 60 (9th Cir. B.A.P. 1997)).

To aid the trustee in accomplishing his goal of collecting cash to distribute to creditors, Congress empowered a trustee, *inter alia*, to sell property of the estate outside the ordinary course of business, subject to court approval, and after notice and a hearing, pursuant to § 363(b). 11 U.S.C. § 363(b). Property of the estate may be sold subject to liens, claims and encumbrances under § 363(b), or may be sold free and clear of liens, claims, and encumbrances under § 363(f).[13] 11 U.S.C. § 363(b), (f). Typically, when a free and clear sale occurs, the secured party is paid from the net proceeds of the sale after real estate commissions and closing costs, the debtor is paid on any allowed exemption claims, and any remaining funds are distributed to the trustee to pay claims allowed in the bankruptcy case. *See* § 726(a)(1)-(5); *In re Messina,* 687

---

[13] A trustee can also sell the interests of the bankruptcy estate and the interests of a non-debtor co-owner of the property at issue, but only do so if he complies with Section 363(h). *See* 11 U.S.C. § 363(h). Because Debtor was the sole, fee simple owner of the Residence at the petition date, § 363(h) is not implicated.

F.3d 74, 79 (3d Cir. 2012).  However, a trustee is not required to sell all property of the estate; the trustee may abandon any property of the estate which is burdensome or of inconsequential value and benefit to the estate.  11 U.S.C. § 554(a); *Ellis*, 2011 WL 61378, at *2.

Thus, from a simple statutory standpoint, the Trustee can sell Debtor's Residence, and § 363(b) allows for a sale subject to liens, if by doing so the Trustee can generate a dividend for creditors, and so long as the sale does not violate another provision of the Bankruptcy Code.  For example, a trustee may not sell property under § 363(b) if the debtor is a corporation or trust "that is not a moneyed business, commercial corporation, or trust," except in accordance with applicable non-bankruptcy law; in addition, a trustee may not sell property in a manner inconsistent with any stay relief granted under § 362(c), (d), (e) or (f).  11 U.S.C. § 363(d).  Finally, a trustee may not sell property under § 363(b) or (f) without the Court providing "adequate protection"[14] to an "entity that has an interest" in the property to be used, sold, or leased, if such entity has requested such protection.  11 U.S.C. § 363(e).  A debtor qualifies as an "entity" that may invoke § 363(e).  *See* 11 U.S.C. § 101(13), (15), (41); *see also* § 542(a); *Yoon v. Minter-Higins*, 399 B.R. 34, 36 (N.D. Ind. 2008); *In re Trujilo*, 485 B.R. 238, 250 (Bankr. D. Colo. 2012).

Thus, the Trustee has properly invoked § 363(b) to seek a sale.

***Can the Trustee sell Debtor's Residence subject to all liens, claims and encumbrances yet also obtain an order of this Court evicting Debtor and his family from the Residence?***

The Trustee has not cited a case in which a chapter 7 trustee sold a residence owned by the debtor subject to all liens, claims and encumbrances, did not pay any liens against the property, and obtained what is essentially an order of eviction from a bankruptcy court.  The Trustee relies on *In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013), for the

---

[14] 11 U.S.C. § 361.

proposition that he can sell Debtor's Residence and not pay Debtor any of the consideration received from the buyer.  However, in *Bunn-Rodemann*, the trustee sold the house free and clear of all liens, claims and encumbrances under § 363(f), the first lien holder agreed to a short sale (a sale for less than the mortgage balance), and agreed to carve funds out for the bankruptcy estate from the lender's interest in the sale proceeds.  *Id.* at 134, 137.  The issue in *Bunn-Rodemann* was whether the debtor could properly claim an exemptible interest in the bankruptcy estate's carve out from the sale proceeds, not whether the house could be sold "subject to" with no compensation to or protection of the debtor, and the debtor ordered to turn the house over to the trustee or the buyer.  The Trustee here has not negotiated a "free and clear" short sale with the lien holder which would result both in a mortgage being paid and an agreed amount of funds being created for the bankruptcy estate.  Thus, the Trustee's reliance on *Bunn-Rodemann* is misplaced.[15]

The Trustee seems to be arguing, at least implicitly, that he can sell Debtor's possessory interest in the Residence with no compensation to or protection of Debtor; if he was not taking this position, he would not ask this Court to order Debtor and his family to vacate the Residence as a condition of a "subject to" sale.  However, the Trustee has not cited a case in which a chapter 7 trustee was authorized to sell a debtor's possessory interest in a residence he owns with no compensation to or protection of that debtor or his family.  This Court has not found authority for this position in the Second Circuit.

---

[15] This Court also notes that the Trustee also refers to a decision from Michigan for the general proposition that where there is no equity in the residence, "the exemption is lost."  Reply, ¶ 8 (*quoting Baldridge v. Ellmann (In re Baldridge*), 2013 U.S. Dist. LEXIS 58512, at *4, 2013 WL 1759365, at *1 (E.D. Mich. April 24, 2013)).  As noted above, this Court does not reach this issue.  However, in *Baldridge*, the court approved a § 363(f) free and clear short sale of a debtor's residence, under which the undersecured first lien lender agreed to pay a surcharge to the estate under § 506(d). The Sixth Circuit, in a per curiam opinion affirming both the district court and the bankruptcy court, held that because the sale amount was insufficient to satisfy the consensual mortgage obligations debtors owed, there was no residual equity in the property to which debtors' exemptions could attach. 2014 U.S. App. LEXIS 2213 at *2-3, 2014 WL 350076, at *1 (6th Cir. Feb. 3, 2014).

The Trustee relies on *In re Toledano* in support of his argument that the Court can force Debtor and his family to vacate the Residence.  299 B.R. 284 (Bankr. S.D.N.Y. 2003).  In *Toledano*, the court granted the chapter 7 trustee's motion for authority to assume and assign the debtor's tenancy interest in a rent-stabilized apartment lease to the debtor's landlord for $150,000 under §§ 105(a), 365 and 521; the assignment was made free and clear of occupants' interests and included an order compelling delivery of the apartment unoccupied.  *Id.* at 299.  The debtor in *Toledano* lived in a luxury apartment overlooking Central Park with her boyfriend pursuant to a rent-stabilized lease; she was the only tenant listed on the lease.  *Id.* at 289-290.  The debtor successfully evaded paying rent for years at a time over the course of twenty years of occupancy, and had been previously denied a discharge under § 727(a)(4)(A).  She filed her then current bankruptcy case after a warrant of eviction had been issued under state law, but before it had been executed.  *Id.* at 290.  Debtor argued that her tenancy interest could not be assumed and assigned as, *inter alia*, she and her boyfriend held an independent, non-contractual possessory right in the apartment.  *Id.* at 291, 294.  In overruling debtor's objection, the court applied Second Circuit case law and concluded that the debtor's rights in the apartment were rooted solely in the rent-stabilized lease, not in any federal or state statute, and that those contractual rights, including her possessory interest, belonged to her bankruptcy estate pursuant to § 541.  *Id.* at 292-294.  Accordingly, the court held that the debtor's unexpired lease could be assumed by the trustee and then assigned to the landlord in accordance with § 365.  The court also held that the debtor's boyfriend lacked any cognizable possessory interest in the apartment as he was not a signatory to the lease and had no possessory rights under New York law.  *Id.* at 295-296.  The court directed the debtor and her boyfriend to vacate the premises, and in the event they failed to do so, authorized the trustee to settle an order directing the United States Marshals Service to

evict them.  *Id.* at 299.

The Trustee's reliance on *Todelano* is misplaced for several reasons.  *Toledano* involved the assumption and assignment of a debtor's unexpired lease under § 365, not the sale of a debtor's residence under § 363(b) subject to all liens, claims and encumbrances.  Sections 363 and 365 of the Bankruptcy Code address different circumstances, contain different requirements, and provide the contracting parties with different protections.  Moreover, the debtor in *Toledano* had exhibited a pattern of failing to abide by the court's orders, disregarding her disclosure obligations, and abusing the bankruptcy process to evade eviction.  That is not the case here; this Debtor has been consistently attempting in good faith to comply with his obligations as first a chapter 13 and now a chapter 7 debtor.

Similarly, although not cited by the Trustee, in *In re Stein*, a chapter 7 trustee was permitted to (i) sell the debtor/ tenant's occupancy rights to his landlord in an apartment in a building converted to a condominium subject to the landlord's interests under § 363(b) and (ii) obtain turnover of the apartment free of the debtor's occupancy.  281 B.R. 845 (Bankr. S.D.N.Y. 2002).  The debtor, Stein, had leased a luxury apartment on the upper west side of Manhattan. The owner of the building filed a "non-eviction plan" to convert the building to a condominium regime; Stein did not exercise his option to buy his apartment, meaning that, as a non-purchasing tenant, he could not be evicted for refusing to purchase so long as he continued to pay any allowable rent and related charges.  *Id.* at 847.  The debtor filed a chapter 7 petition a few weeks before his lease expired.  *Id.*  Thus, whether by virtue of the conversion plan or under state law, Stein retained a right of occupancy as of the petition date, which the court allowed to be sold to the building owner under § 363(b) and, if necessary, Stein dispossessed.  *Id.* at 848, 852. However, *Stein*, too, is distinguishable because the trustee in that case sold an essentially

unmarketable right, which only became economically available to the estate by virtue of the landlord's decision to waive his overdue rent claim against the estate. *Id.* at 851-852. The debtor was in substantial arrears, and a pre-petition eviction proceeding was stayed by the bankruptcy filing; any potential purchaser of the tenancy interest would take subject to those arrears and would be subject to eviction almost immediately. *Id.* By selling the debtor's occupancy rights to the landlord, the only other entity with an interest in the apartment and which consented to the sale, the trustee was able to create a benefit to the estate by resolving the landlord's unpaid rent claim against the estate and generate funds for unsecured creditors. *Id.* By contrast here, the proposed sale is not to a party with an existing interest in the Residence, does not resolve any of the mortgagee's claims against the estate, as a subject to sale does not vitiate the mortgagee's *in rem* or *in personam* claims, and there is no indication that a foreclosure sale or an eviction is a foregone conclusion; in fact, Chase has not sought and this Court has not authorized relief from the automatic stay. Further, the debtor in *Stein* did not request adequate protection under § 363(e) and he did not even reside at the apartment as of the time of the decision; it was being used as an office for a company owned by the debtor's deceased mother. *Id.* at 846 n.1. Finally, as noted, Chase has objected to the sale here, whereas the *Stein* landlord was the assignee and supported the sale.

The question, then, is the extent to which the possessory interest of a debtor who owns and occupies his residence, individually or jointly, becomes property of the estate, and the extent to which that debtor would be entitled to adequate protection under § 363(e). Because § 363 does not differentiate "use" from "sell" or "lease" in § 363(b)(1), if a trustee can sell a debtor's residence without adequate protection, by analogy then, a trustee could make a debtor pay rent while the chapter 7 case is open and/or rent the debtor's house out while the chapter 7 case is

open, at least prior to a mortgagee foreclosing.

This Court has not found case law from within the Second Circuit on whether a trustee could charge a debtor rent or lease the debtor's home out during the administration of the chapter 7 case. However, the Seventh Circuit did address this issue in *In re Szekely*, 936 F.2d 897 (7th Cir. 1991). In *Szekely*, Judge Posner writing for the circuit squared the question as follows:

> [t]his bankruptcy appeal raises a surprisingly fundamental, and difficult, question … on which we are unable to find any authority. The question is whether if a debtor continues to occupy his home after declaring bankruptcy, the trustee can charge rent to him, notwithstanding the homestead exemption.

*Id.* at 898-899. After dispensing with a question of whether the bankruptcy court's decision requiring the debtor to pay rent to stay in his residence was interlocutory and not within the circuit court's appellate jurisdiction, the court stated:

> the trustee points out correctly that the debtors' home became an asset of the bankrupt estate upon the declaration of bankruptcy. 11 U.S.C. § 541. Thus, by continuing to live in the house, the Szekelys were using an asset that belonged to the bankrupt estate, not to them. Therefore - - the trustee argues - - they should be required to pay rent for its use, just as anyone else leasing assets of the estate would be required to pay rent to the trustee.

*Id.* at 900. The court then spent most of its discussion on how the debtors' fresh start and homestead exemption would suffer if their homestead exemption, at that time $15,000 in Illinois, could be reduced by the fair rental value of their residence pending sale by the trustee. The *Szekely* court concluded its analysis by stating that, although the residence was clearly property of the estate, the relationship of the trustee and the debtors could be analogized to that of a tenancy in common:

> The interaction of bankruptcy law and the homestead exemption made the Szekelys in effect cotenants, with the trustee, of the Szekelys' former house. The trustee was entitled to obtain sole rights to the property by paying off the homestead exemption-in effect a partition of the property in which the Szekelys would receive $15,000-but until then he had no right to disturb the Szekelys in their possession of the property.

*Id.* at 903. Ultimately, the court held that "the homestead exemption in Illinois entitles the debtor to remain in his home rent free until he receives the cash value of the exemption. We therefore reverse the decisions below with directions to allow the debtors their full $15,000 from the proceeds of the sale of the house." *Id.* The trustee was able to sell the house for more than enough to pay off the consensual liens and debtors' full homestead exemption, and create a distribution for the estate.

The *Szekely* analogy of the trustee and Debtor as co-tenants under a tenancy in common during the term of the chapter 7 case provides a workable analytic framework for this case. The interest a debtor holds in specific property is a matter of state law, *see Musso*, 468 F.3d at 105, but federal law determines whether and to what extent a state-law created interest constitutes property of the estate. *Crysen/Montenay Energy*, 902 F.2d at 1098. New York law recognizes that ownership of real property in fee simple includes a right of possession. N.Y. E.P.T.L. § 6-1.1; *Brookfield*, 176 N.Y. at 146. Under New York law, neither co-tenant may force the other to pay rent or interfere with his or her right to possession, *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503; 330 N.E.2d 414 (N.Y. 1975); *Klein v. Herman*, 17 A.D. 2d. 652, 653 (N.Y. App. Div. 2d Dep't 1962), but a co-tenant may unilaterally encumber or dispose of his or her own interest. *Cary v. Fisher*, 149 A.D.2d 890, 892 (N.Y. App. Div. 3d Dep't 1989). The possessory interest of the estate and the debtor would both be subordinate under state law to any valid, perfected and enforceable mortgage liens. *See Holmes v. Gravenhorst*, 263 N.Y. 148, 152-155 (N.Y. 1933); *see also* N.Y. Real Property Actions and Proceedings Law § 1354 (2014); *see generally In re 47-48 Douglass Street, LLC*, 2011 WL 2551294, at *2 (Bankr. S.D.N.Y. June 27, 2011) ("the mortgagor holds legal title [which includes possession] to the mortgaged property for the duration of the loan period," and has a right to possession until foreclosure).

A trustee using his federally created powers can sell the entirety of the debtor's residence free and clear under § 363(f), and can sell non-filing parties' co-ownership interests as well under § 363(h), so long as he complies with the statutory requirements thereof.  Alternatively, the trustee may exercise his business judgment and decide not to sell a debtor's residence; the trustee could also abandon the estate's interest under § 554 as burdensome or of inconsequential value, in which case the estate would lose its power of sale and its co-tenancy interest.

However, following the co-tenancy analogy, a trustee would not be able to sell a debtor's residence "subject to" the debtor's co-tenancy interest and simultaneously obtain an order evicting his co-tenant without providing adequate protection of Debtor's possessory interest under § 363(e).  *See Jemzura*, 36 N.Y.2d at 503 ("a tenant in common has the right to take and occupy the whole of the premises…so long as he or she does not interfere with the right of a cotenant to also occupy the premises"); *see also Brown v. Dellinger (In re Brown),* 734 F.2d 119, 124 (2d Cir. 1984) ("the bankruptcy estate can have no greater interest in property included in it than the debtor had when the petition was filed.").

Thus, the Trustee has not demonstrated that the Bankruptcy Code allows him to sell the Residence subject to all liens, claims and encumbrances yet forcibly terminate Debtor's right to possess and occupy the premises, and to evict his family, without compensation to Debtor or adequate protection of Debtor's possessory interest under § 363(b).  Based thereon, this Court will not approve the requested sale.  As such, this Court need not and will not reach Debtor's claim that he would be entitled to any of the sale proceeds were the Court to approve the sale, nor Chase's objection that the sale should not be approved because its mortgage is not being paid by the buyer.

Therefore, the Motion is denied.

**SO ORDERED:**



Dated: **May 30, 2014**
      **Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**